IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| DERRICK WELCH, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | CV 00-BU-2794-M |
| ) | |
| WARDEN STEVE DEES, et.al., ) | |
| ) | |
| DEFENDANTS. ) | |

ENTERED
DEC 27 2001

## MEMORANDUM OF OPINION

Derrick Welch, hereinafter referred to as plaintiff, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration at St. Clair Correctional Facility in Springville, Alabama. Plaintiff names as defendants Warden Steve Dees, Sgt. Earl Pickett, Sgt. Royce Brown, COI Willie Miles and Ms. Mikki Woody. He seeks monetary damages as well as expungement of a disciplinary infraction from his record.

The magistrate judge entered an Order for Special Report (Document #28) directing that copies of the complaint in this action be forwarded to defendants, requesting that they file a special report addressing the factual allegations of the plaintiff's complaints. The defendants were advised that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. By the same Order, plaintiff was advised that after he received a copy of the special report submitted by the defendants he should file counter affidavits if he wished

36

to rebut the matters presented by defendants in the special report. Plaintiff was further advised that such affidavits should be filed within twenty days after receiving a copy of the defendants' special report.

The defendants filed a special report (Document #33) accompanied by their affidavits and pertinent documents. Plaintiff was thereafter notified that he would have twenty days to respond to the motion for summary judgment, filing affidavits or other material if he chose. Plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). Plaintiff filed no response.

## SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff,

2

who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (citation omitted). However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986).

## FACTUAL ALLEGATIONS

Applying the above standard to the facts before the court, the following facts are undisputed or, if disputed, are taken in a light most favorable to the plaintiff.

Plaintiff claims that his 8th and 14th amendment rights were violated by the defendants during the investigation and prosecution of two (2) disciplinary actions charging the plaintiff with violations of Rule #68 (Theft) and #72 (Forgery) of the Alabama Department of Corrections' Administrative

Regulation #403.[1] On the day the incidents allegedly occurred, Sgt. Earl Pickett and Officer Willie Miles asked defendant Mikki Woody if she could identify the plaintiff as the inmate who "sign[ed] another inmate's name and receiv[ed] canteen iteams (sic) in that person[']s name....[to which Moody] responded negatively."[2] At the disciplinary hearing, defendant Woody "gave a sworn statement that she did in fact verify to ...Pickett and Miles...that plaintiff wasn't the person...she saw receive the canteen items, but changed her story and said that it was in fact the plaintiff whom she saw."[3] Moreoever, defendants Pickett and Myles failed to properly investigate the charges by refusing to review the tape of a video camera stationed at the canteen office which plaintiff contends would have shown his innocence.[4]

Plaintiff also attests that Officer Richard Banks violated his 8th and 14th amendment rights by acting as the arresting officer with regard to the infractions because Banks wrote up the report "when he was not even at work on the day of the incident...[so Banks] could not have been the

---

[1] (Document #1, at 5 ). NOTE: Although plaintiff alleges he has been subjected to 8th amendment violations, his claims quite clearly relate only to the Due Process Clause.

[2] *Id.* Defendant Woody does not deny that upon observing the plaintiff on the day of these particular incidents (August 29, 2000), she informed Officer Pickett that the plaintiff was "not the inmate because inmate Welch was wearing a cap and I did not see the star tattoo on his forehead. I later saw inmate Welch without the cap and could see the tattoo." (Exhibit 3 to Document #6) at 1-2.

[3] *Id.* at 6. At the disciplinary hearing, defendant Woody admitted "at first" she told "Sgt. Earl Pickett that inmate Welch was not the inmate who forged inmate James Brown's name to a store slip at the store window." Disciplinary Report (Exhibit 2 to Document #6) at 2. However, later she "recognized that inmate Welch as the one who picked up James Brown's store draw on the 29th because of the tattoo between his eyes." *Id.*

[4] *Id.* at 5. However, defendant Woody attests that on the day of the August 29, 2000, incident, "[t]he video camera was broken . . . and as a result of that we could not view who had drawn on inmate Brown's account." (Exhibit 3 to Document #6) at 1. Defendant Pickett admits that "[a] video camera was stationed at the outside of the canteen" but does not state that he investigated the camera in any fashion. (Exhibit 4 to Document #6) at 2. Neither Willie Myles, Richard Banks nor Royce Brown made any response to the plaintiff's allegations concerning the video camera. (Exhibits 5,6, and 7 to Document #6).

4

arresting officer as he witnessed nothing at all."[5] Further, defendant Royce Brown changed questions presented by the plaintiff at the disciplinary hearing and "even changed some of the answers when he drafted the final copy of the report" in order give the appearance of a proper finding of guilt on written documentation associated with the disciplinary.[6] In particular, "another officer (Officer Peterson) informed defendant Brown that the plaintiff was at work and that the plaintiff was not in the camp until 3:30 pm....prov[ing] the plaintiff's innocence of the charges, as he couldn't have received the canteen items at work." *Id.* Instead of properly recording Peterson's testimony, defendant Brown "changed the time to 2:00 p.m. on the final copy of the report...." and found the plaintiff guilty of the infractions.[7]

Plaintiff was punished for both disciplinary infractions in the following manner: 90 days disciplinary segregation, 90 loss of telephone, store and visitation privileges, upgrade in custody from minimum to medium, loss of his eligibility to transfer to a lesser security level and placement in administrative segregation for an indefinite period of time. (Document #8, at 1-2). Finally, plaintiff explains, "I wrote a letter (Document #1, at 2) to the Warden, Mr. Dees letting him know

---

[5] *Id.* at 5. Defendant Richard Banks was not present in the canteen on August 29, 2000. However, on August 30, 2000, defendant Banks was on duty as the officer in charge of canteen security when the actual James Brown "came to the Canteen to get his store order." (Exhibit 6 to Document #6) at 1. At that time, the defendants discovered the fraudulent draws made on inmate Brown's account on August 21, 2000, and August 29, 2000. *Id.* After defendants Pickett, Miles and Moody investigated the incident, and submitted information to defendant Banks, Banks then initiated disciplinary action against the plaintiff. *Id.*

[6] *Id.* at 6. Defendant Brown attests any allegations that he "changed the questions and answers to [plaintiff's] disciplinary hearing . . . . is a lie. None of the questions or answers were altered in any way." (Exhibit 7 to Document #6) at 1.

[7] *Id.* Defendant Brown states that on the disciplinary hearing sheets, he wrote that he (Brown) checked with Officer Kenneth Peters at the Sallyport and was writing as I spoke with him and . . . he corrected from 'approximately 2:00 p.m.' to 'the regular time, shortly after 2:00 p.m.' I marked out 'approximately 2:00 p.m.' and wrote in what Officer Peters said." (Exhibit 7 to Document #6) at 1. Defendant Brown also attached a copy of the Duty Post Log, which tends to show that the plaintiff's work squad logged back in some time around 1:30 and 2:00 p.m. *Id.* at 2.

I was wrongfully misused on the matter at hand and he never wrote back."[8] As such, plaintiff contends Warden Steve Dees violated his 8th and 14th amendment rights by approving the disciplinary infractions "when he knew that the other defendants did not and would not review the tape of the video camera that would have shown that the plaintiff didn't violate any rules." *Id.* at 6.

*Defendants' Special Report*

The defendants request this court grant summary judgment in their favor, asserting that plaintiff has failed to state a claim upon which relief may be granted, that plaintiff's action is based upon the doctrine of respondeat superior, and that the defendants are entitled absolute and qualified immunity. Special Report (Document #33, at 3). Defendants also deny each and every allegation presented against them in the plaintiff's complaint. *Id.*

## **WARDEN STEVE DEES**

It is undisputed that Warden Dees is now deceased. As such, any and claims against defendant Dees are due to be dismissed.

## **DUE PROCESS**

"It is well established that the due process clause is only triggered by the deprivation of a protected [liberty] interest." *Pierce v. King*, 918 F. Supp. 932, 943 (E.D. N.C. 1996). In almost all instances, a determination that the plaintiff has a liberty interest in the punishment he was given is

---

[8] In their order for special report, the defendants assert that "Warden Dees retired from the Department of Corrections on December 29, 2000 and died on May 20, 2001." (Document #33, at 2).

a threshold question which must be answered in the affirmative before a procedural due process claim becomes viable. If this question is answered in the negative, no further inquiry is required. However, allegations that a disciplinary action, although procedurally sound, is essentially a product of admitted lies or deception, mandate further study even if a liberty interest is not implicated in the punishment meted out against an inmate. In those cases, the court must determine whether the disciplinary process itself was conducted in such an 'arbitrary and capricious' manner that a substantive due process has been implicated.

In the present action, plaintiff contends that his right to due process of law was violated by the defendants failed to properly investigate the disciplinary charges against him, gave false testimony at the disciplinary hearing, and altered questions and answers given at the disciplinary hearing to support a finding of guilt. In other words, plaintiff asserts that he was found guilty of the disciplinary when the evidence showed that he was innocent of the charges. In the discussion below, this court shall determine whether the plaintiff's procedural and/or substantive due process rights were violated.

## Procedural Due Process

*Administrative and Disciplinary Segregation*

The Supreme Court in *Sandin v. Conner* explained that while no freestanding constitutional liberty interest exists in disciplinary or administrative segregation, state law, under certain circumstances, can create a liberty interest protected by the Due Process Clause in the context of

"disciplinary changes in a prisoner's conditions of confinement...." [9] Those state created interests would be "limited to freedom[s] from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, *nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.*"[10] (emphasis added) In applying this standard to the plaintiff's case in *Sandin*, the Court found that 30 days disciplinary segregation was not an atypical or significant hardship from the plaintiff's ordinary conditions of incarceration in the Hawaii prison system. As such, the inmate's segregation did not amount to a grievous loss protected by the Due Process Clause.

After the Supreme Court's decision in *Sandin*, a review of disciplinary segregation in the Alabama prison system drew the conclusion that segregation is generally "not a dramatic departure from the ordinary conditions of confinement nor is it a 'major disruption in [an Alabama prisoners'] environment.'"[11] However, the 11th Circuit has also adhered to *Sandin's* precedent by reviewing whether a liberty interest has been created on a case by case basis. For instance, in *Williams v. Fountain*[12], the Court presumed the plaintiff suffered a liberty deprivation and was entitled to due process because Williams was placed in solitary confinement for one (1) year. By contrast, in

---

[9] *Williams v. Fountain*, 77 F.3d 372, 374 n.3 (11th Cir. 1996) **citing** *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). See also *Garlington v. Haley*, 2001 WL 530451, at 4, ----F.Supp.---- (S.D. Ala. 2001.)

[10] *Id.*

[11] See *infra*, ftnte 3. Citation taken from *Boglin v. Weaver*, 2001 WL 228172, 5, ----F.Supp.---- (S.D. Ala. 2001) citing *Sandin*, 515 U.S. at 486.

[12] See *infra*, ftnte 3.

8

*Rogers v. Singletary*,[13] the same Court determined that two (2) months placement in administrative segregation did not represent the atypical and significant hardship envisioned by *Sandin*.

In the present case, plaintiff was placed in disciplinary segregation for ninety (90) days. Neither the term nor the conditions of his confinement implicates a liberty interest. Further, while plaintiff states that he was also placed in administrative segregation 'indefinitely', unlike *Williams*, there are no facts in the record to indicate he remained in administrative segregation for such a period of time that the court should presume a liberty interest exists.

Finally, assuming plaintiff is still in administrative segregation and assuming this court were to determine that such a restriction has created a liberty interest, to the extent the plaintiff complains about the manner of his confinement, the action is not properly brought under § 1983. A challenge to the fact or duration of a prisoner's confinement must be brought in a habeas corpus action under § 2254 following exhaustion of state remedies. *Prieser v. Rodriguez*, 411 U.S. 475 (1973). This is true of prison disciplinary procedures as well. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed. 2d 935 (1974). Moreoever, to the extent the plaintiff seeks damages under this circumstance, the United States Supreme Court held in *Heck v. Humphrey*, 512 U.S. 477, 486 ;114 S.Ct. 2364, 2372; 129 L.Ed.2d 383 (1994) that "[i]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid [a] § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

---

[13] 142 F.3d 1252, 1253 (11th Cir. 1998).

authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." The plaintiff's present claim, if successful, would "necessarily imply the invalidity of his conviction or sentence [and, as such], the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

Therefore, because the plaintiff has not proven he has a liberty interest in administrative or disciplinary segregation, neither the lack of due process nor any deficiency in procedure actually used is actionable under the Fourteenth Amendment or § 1983. Finally, even if he were still in administrative segregation and *if* this court were to determine a constitutionally protected liberty interest had arisen because of the time he has remained there and conditions of same, this court is precluded by habeas corpus and *Heck* principles from granting the plaintiff injunctive and monetary relief.

*90 days loss of Store, Visitation and Telephone Privileges*

"Inasmuch as confinement to disciplinary segregation has been held by the Supreme Court to be a type of discipline that should be expected by an inmate as incident to his criminal sentence, losing store, phone and visitation privileges is a form of discipline that should be expected by an inmate as well....[L]oss of privileges is not 'an atypical and significant hardship...in relation to the ordinary incidents of prison life'".[14] Therefore, because the plaintiff has not proven he has a liberty

---

[14] *Anderson v. Jones*, 1999 WL 1565203, 9, ----F.Supp. ---- (S.D.Ala. 1999), *affirmed* 245 F.3d 795 (11th Cir. (Ala.) 2000). (citations omitted)

interest in the above privileges, neither the lack of due process nor any deficiency in procedure actually used is actionable under the Fourteenth Amendment or § 1983.

*Eligibility to Transfer and Upgrade in Custody*

To the extent that plaintiff is alleging that the defendants upgraded his custody from minimum to medium (which thwarted his eligibility for transfer to a lesser security level) without due process his claim must fail. "[T]he Due Process Clause in and of itself [does not] protect a duly convicted prisoner against transfer from one institution to another within the state system." *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538 (1976). Nor does it protect a convicted prisoner when he is transferred interstate. *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741 (1983).[15]

Additionally, "[i]nmates have neither a protectable property nor liberty interest in custodial classification." *Mikeska v. Collins,* 900 F.2d 833, 836 (5th Cir. 1990). A change in level of custody within a prison system does not infringe upon or implicate a liberty interest within the meaning of the due process clause. *United States v. Williams,* 787 F.2d 1182, 1184 n.3 (7th Cir. 1986)(citing *Moody v. Daggett,* 429 U.S. 78, 87-89 (1976) and *Meachum v. Fano*, 427 U.S. 215 (1976). Therefore, because the plaintiff has not proven he has a liberty interest in his ability to transfer or custodial status, neither the lack of due process nor any deficiency in procedure actually used is actionable under the Fourteenth Amendment or § 1983.

In conclusion, since the plaintiff has no liberty interest in disciplinary or administrative segregation, remaining in a particular institution or classification, or the aforementioned privileges,

---

[15] The rationale utilized in both *Meachum* and *Wakinekona* was confirmed by the Supreme Court again in *Sandin v. Connor,* 515 U.S. 472, 483, 115 S.Ct. 2293, 2300 (1995).

11

he has failed to establish a claim against any of the defendants pursuant to the Fourteenth Amendment's Due Process Clause to the United States Constitution. Accordingly, for the reasons stated above, this action is due to be dismissed.

### Substantive Due Process

Prison authorities may not use information which they know to be false to classify an inmate as a sex offender, thereby making the inmate ineligible to participate in work release programs. *Monroe v. Thigpen*, 932 F.2d 1437, 1441-42 (11th Cir. 1991). In *Monroe v. Thigpen*, inmate Monroe was convicted of the murder of Linda Ann Harden. The presentence investigation report ("PSI") in Monroe's institutional file indicated that he had raped Ms. Hardin prior to killing her and that he had admitted this fact to the parole officer who prepared the PSI. Based on this information, Monroe was classified as a sex offender and was denied work release. Monroe wrote to the Board of Pardons and Paroles stating that the information contained in the PSI was false and requesting that the PSI be corrected. Although the Board of Pardons and Paroles determined that the information was, in fact, false, it refused to correct the erroneous statements. The Eleventh Circuit Court of Appeals held that Monroe's due process rights had been violated by the use of *admittedly* false information to classify Monroe as a sex offender and to deny him parole. 932 F.2d at 1441-42. The court made it clear that it was the *knowing* use of the false information that was the gravamen of defendants' actions.

There has been no admission by any of the defendants in this case that they perjured themselves or intentionally placed false information in the plaintiff's final disciplinary report.

12

"[W]here, as here, the question is not the use of admittedly false information by the [defendants], but whether the information was in fact false, there is simply no federal cause of action." *James v. Robinson*, 863 F. Supp. 275, 278 (E.D. Va.), *aff'd*, 45 F.3d 426 (4th Cir. 1994) (Table). This claim is therefore due to be dismissed.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this the 27th day of December, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE